**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| **STEPHEN H. BREWSTER,** | **CHAPTER 11** |
| **Debtor.** | **CASE NO. 14-40039-PWB** |
| **STEPHEN H. BREWSTER,** | **ADVERSARY PROCEEDING** |
| **Plaintiff,** | **NO.  22-_____** |
| **v.** | |
| **CRIMSON PORTFOLIO, LLC, CRIMSON PORTFOLIO ALPHA, LLC, DRRF II SPE, LLC, DRRF TRUST 2015-1, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, MOUNTAINVIEW MORTGAGE OPPORTUNITIES FUND III TRUST I, WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR MVMF III, TRUST B, STATEBRIDGE COMPANY, LLC, FAY SERVICING, LLC, U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR CVI LCF MORTGAGE LOAN TRUST I, RUSHMORE LOAN MANAGEMENT SERVICES LLC, MTGLQ INVESTORS, L.P., US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST, U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES IV TRUST, and SN SERVICING CORPORATION,** | |
| **Defendants.** | |

**COMPLAINT FOR INJUNCTION AND OTHER RELIEF**

Stephen H. Brewster ("**Brewster**" or "**Plaintiff**") files this Complaint against Crimson Portfolio, LLC ("**Crimson Portfolio**"), Crimson Portfolio Alpha, LLC ("**Crimson Portfolio Alpha**"), DRRF II SPE, LLC ("**DRRF II**"), DRRF Trust 2015-1, U.S. Bank National Association, as Trustee ("**DRRF Trust**"), MountainView Mortgage Opportunities Fund III Trust I ("**MountainView**"), Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, not in its individual capacity but

solely as trustee for MVMF III, Trust B ("**MVMF III**"), Statebridge Company, LLC ("**Statebridge**"), Fay Servicing, LLC ("**Fay**"), U.S. Bank Trust National Association, as trustee for CVI LCF Mortgage Loan Trust I ("**CVI LCF**"), Rushmore Loan Management Services LLC ("**Rushmore**"), MTGLQ Investors, L.P. ("**MTGLQ**"), US Bank Trust National Association as trustee of the Tiki Series IV Trust ("**Tiki IV**"), U.S. Bank Trust National Association, as Trustee of the Cabana Series IV Trust ("**Cabana IV**"), and SN Servicing Corporation ("**SN Servicing**") (collectively, "**Defendants**") seeking a citation for contempt of Court against Defendants, a declaratory judgment interpreting Brewster's confirmed Chapter 11 Plan of Reorganization, an accounting of all funds received by Defendants from Brewster, and attorney's fees for bringing this action as a result of Defendants' violation of the Plan, Confirmation Order, and Claim Objection Order, all as further set forth below. Brewster, by and through the undersigned counsel, respectfully shows this Court as follows:

### Background, Jurisdiction, and Venue

1.      This adversary proceeding is related to the main Chapter 11 bankruptcy case of *In re Stephen H. Brewster*, previously pending in the Rome Division of the United States Bankruptcy Court for the Northern District of Georgia as Case No. 14-40039-pwb.

2.      Crimson Portfolio is a Delaware limited liability company and may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

3.      Crimson Portfolio Alpha is a Delaware limited liability company and may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

4.      DRRF II is a Delaware limited liability company and may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center 1209 Orange St., Wilmington, Delaware 19801.

5.      DRRF Trust is a Delaware statutory trust and may be served through its registered agent, U.S. Bank Trust National Association, 1011 Centre Road Suite 203, Wilmington, Delaware 19805.

6.      MountainView is a Delaware statutory trust and may be served through its registered agent, Wilmington Savings Fund Society, FSB, 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801.

7.      MVMF III is a Delaware statutory trust and may be served through its registered agent, Wilmington Savings Fund Society, FSB, 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801.

8.      Statebridge is a Colorado limited liability company and may be served through its registered agent, Incorp Services, Inc., 9040 Roswell Road, Suite 500, Atlanta, Georgia 30350.

9.      Fay is a Delaware limited liability company and may be served through its registered agent, Registered Agent Solutions Inc, 900 Old Roswell Lakes Pkwy, Ste 310, Roswell, Georgia 30076.

10.     CVI LCF Trust is a Delaware statutory trust and may be served through its registered agent, U.S. Bank Trust National Association, 1011 Centre Road Suite 203, Wilmington, Delaware 19805.

11.     Rushmore is a Delaware limited liability company and may be served through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

12.     MTGLQ is a Delaware limited partnership and may be served through its registered agent, The Corporation Trust Company, Corporation Trust Center 1209 Orange St., Wilmington, Delaware 19801.

13.     Tiki IV is a Delaware statutory trust and may be served through its registered agent, U.S. Bank Trust National Association, 1011 Centre Road Suite 203, Wilmington, Delaware 19805.

14.     Cabana IV is a Delaware statutory trust and may be served through its registered agent, U.S. Bank Trust National Association, 1011 Centre Road Suite 203, Wilmington, Delaware 19805.

15.     SN Servicing is an Alaska corporation and may be served through its registered agent, Prentice-Hall Corporation System, Inc., 9360 Glacier Hwy Ste 202, Juneau, Alaska 99801.

16.     Stephen H. Brewster is a Georgia resident who owns certain real property located at 14 Belle Meade Dr SW, Rome, Georgia 30165 (the "**Property**").

17.     The Bankruptcy Court has jurisdiction over the parties and this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, the retention of jurisdiction provisions of the Plan, the Confirmation Order, and the Claim Objection Order.

18.     This Adversary Proceeding is filed pursuant to Federal Rule of Bankruptcy Procedure (hereinafter the "**Bankruptcy Rules**") 7001 and represents a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (K), (L), and (O).

**Factual Background**

19.     Brewster is the owner of the Property as demonstrated by the Warranty Deed recorded on May 13, 2004 in the land records of Floyd County, Georgia, book 1871 page 832 *et seq.*; the Corrective Warranty Deed recorded on August 16, 2004 in the land records of Floyd County, Georgia, book 1889 page 884 *et seq.*; and the Warranty Deed recorded on August 16, 2004 in the land records of Floyd County, Georgia, book 1889 page 887 *et seq*. True and correct copies of the Warranty Deeds and Corrective Warranty Deed are attached hereto as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3**, respectively.

20.     On September 13, 2004, Brewster executed a Right of Survivorship Deed, which was recorded on September 13, 2004 in the land records of Floyd County, Georgia, book 1895 page 9 *et seq*., transferring the Property from Brewster individually to Brewster and Mrs. Bonnie Brewster as joint tenants with the right of survivorship. A true and correct copy of the Right of Survivorship Deed is attached hereto as **Exhibit 4**.

21.     On April 29, 2005, Brewster and Bonnie Brewster executed a Security Deed (the "**Security Deed**") granting Citizens First Bank a security interest in the Property. The Security Deed was recorded on May 2, 2005 in the land records of Floyd County, Georgia, book 1937 page 894 *et seq*. A true and correct copy of the Security Deed is attached hereto as **Exhibit 5**.

22.     On May 20, 2009, Bonnie Brewster executed a Quit Claim Deed, which was recorded on May 26, 2009 in the land records of Floyd County, Georgia, book 2188 page 696 *et seq*., transferring her interest in the Property to Brewster. A true and correct copy of Quit Claim Deed is attached hereto as **Exhibit 6**.

23.     On December 10, 2012, Synovus Bank, formerly known as Columbus Bank and Trust Company, as successor in interest through name change and by merger with Citizens First Bank, assigned the Security Deed to Crimson Portfolio pursuant to that Assignment of Security Instruments recorded on April 10, 2013 in the land records of Floyd County, Georgia, book 2350 pages 67-69 (the "**First AOM**"). A true and correct copy of the First AOM is attached hereto as **Exhibit 7**.

24.     On August 5, 2013, Crimson Portfolio assigned the Security Deed to Crimson Portfolio Alpha pursuant to that Assignment of Security Deed recorded on August 13, 2013 in the land records of Floyd County, Georgia, book 2366 pages 940-943 (the "**Second AOM**"). A true and correct copy of the Second AOM is attached hereto as **Exhibit 8**.

25.     On January 6, 2014 (the "**Petition Date**"), Brewster filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the Northern District of Georgia, Rome Division (the "**Bankruptcy Court**"), identified as case no. 14-40039-pwb (the "**Bankruptcy Case**").

26.     On January 8, 2014, Brewster filed a Motion Requesting Authorization to Commence Post-Petition Residential Mortgage Payments, seeking permission from the Court to commence post-petition payments to Crimson Portfolio Alpha (Bankruptcy Case, Doc. No. 13). On January 24, 2014, the Court granted Brewster's request (Bankruptcy Case, Doc. No. 33).

Brewster commenced his regular post-petition monthly mortgage payments to Crimson Portfolio Alpha on January 30, 2014 for the February 1, 2014 payment.

27.    On April 10, 2014, Crimson Portfolio Alpha assigned the Security Deed to DRRF II pursuant to that Assignment of Security Deed recorded on May 5, 2014 in the land records of Floyd County, Georgia, book 2392 pages 543-545 (the "**Third AOM**"). A true and correct copy of the Third AOM is attached hereto as **Exhibit 9**.

28.    On April 15, 2014, Crimson Portfolio filed proof of claim number 11 (the "**Claim**"). Per the Claim, Crimson Portfolio asserted that Brewster owed it $635,342.89 as of the Petition Date, consisting of: (i) principal in the amount of $626,606.87, and (ii) interest in the amount of $8,736.02. Crimson Portfolio also asserted that Brewster was in arrears $30,865.82 on the loan.

29.    On June 20, 2014, the Bankruptcy Court entered the confirmation order (the "**Confirmation Order**") confirming Brewster's Plan of Reorganization (the "**Plan**" as modified or amended). *See Order Confirming Plan* attached as **Exhibit 10**; *Amended Plan of Reorganization* attached as **Exhibit 11**; and *First Modification to Plan of Reorganization* attached as **Exhibit 12**.

30.    The Confirmation Order provides that "[a]ll provisions of the Plan shall bind Debtor, all entities receiving property under the Plan, all Creditors and all Interest Holders, whether or not the Claims or Interests of such Creditors or Interest Holders are impaired under the Plan, and whether or not such Creditors or Interest Holders have accepted the Plan." *See* Confirmation Order at p. 2.

31.    The Claim secured by the Property was included and treated in the Plan pursuant to Class 4 of the Plan (the Claim is sometimes referred to herein as the "**Class 4 Claim**"). Pursuant to the Plan, the arrearage on the Claim (the "**Class 4 Arrearage**") was determined to be $18,375.81 to be paid in 18 equal monthly payments of $1,019.55 each. The Plan further provides that Brewster will continue to pay his regular monthly mortgage payments of $3,170.83 per month to Crimson Portfolio Alpha in accordance with the nondefault terms of the pre-petition loan documents, and such pre-petition loan documents continued in full force and effect provided that

the Bankruptcy Case and Brewster's financial condition would not constitute a default under the same.

32.    On November 18, 2014, Brewster objected to the Claim. On December 16, 2014, the Court entered a consent order on Brewster's objection to the Claim (the "**Claim Objection Order**"), which demonstrates the agreement between Brewster and DRRF II (the then-holder of the Security Deed through assignment). The Claim Objection Order provides that:

a.    the Class 4 Arrearage is $15,205.81 as of October 31, 2014;

b.    Brewster will cure the arrearage in 14 equal monthly payments of $1,019.55 each commencing on December 20, 2014 and continuing by the 20th day of each subsequent month, with a 15th and final payment in the amount of $932.11; and

c.    The Court retains jurisdiction to interpret and enforce the terms of the Claim Objection Order.

*See Claim Objection Order* attached hereto as **Exhibit 13**.

33.    Brewster timely commenced the $1,019.55 monthly payment on the Class 4 Arrearage. Brewster has completed all 15 payments on the Class 4 Arrearage required by Brewster's Plan and the Claim Objection Order.

34.    Brewster commenced payment of the regularly scheduled post-petition mortgage payments on January 31, 2014, in accordance with Class 4 of the Plan, which payment was applied to the February 1, 2014 mortgage payment.

35.    Crimson Portfolio Alpha (the then-servicer of the Class 4 Claim) began applying his regularly scheduled post-petition mortgage payment to a suspense account in October 2014. Crimson Portfolio Alpha would then credit arrears payments or regular payments on the Class 4 Claim from the suspense account, seemingly at the whim of Crimson Portfolio Alpha and notwithstanding the terms of Brewster's confirmed Plan and the Claim Objection Order.

36.    As a result of improperly applying Brewster's payments and in direct violation of the Plan and the Claim Objection Order, Crimson Portfolio Alpha applied Brewster's regular

mortgage payments toward the Class 4 Arrearage rather than toward the principal and interest outstanding on the Class 4 Claim. Once the suspense account held enough funds to make a complete payment, Crimson Portfolio Alpha would apply the payment first to the interest it booked as accrued and then to the principal balance. Because Crimson Portfolio Alpha first applied the full regular monthly payment to the suspense account, then paid the arrearage (in violation of the Plan and Claim Objection Order), and then finally paid the regular payment, the regular payments were deemed received later than they were actually made. The delay between payment and application increased the accrued interest that was paid down when a payment was actually applied. Thus, the servicer charged, and Brewster paid, interest that would not have accrued on the account but for the servicer's misapplied payments.

37.     On December 29, 2014, the Court entered the Final Decree, which, among other things, enjoined and stayed all creditors of, claimants against, and all persons having or claiming interest of any nature in Brewster's property and assets from pursuing or attempting to pursue any action, commencing or continuing any action, employing any process or any act against Brewster or his property, on account of or based upon any right, claim, or interest which any such creditor, claimant, or other person may have had at the date of the filing of Brewster's Chapter 11 petition, except with respect to claims, rights, or interest arising out of the Plan or orders of this Court. *See Final Decree* attached as **Exhibit 14**.

38.     On March 5, 2015, DRRF II assigned the Security Deed to DRRF Trust pursuant to that Assignment of Deed of Trust recorded on April 20, 2015 in the land records of Floyd County, Georgia, book 2426 pages 408-409 (the "**Fourth AOM**"). A true and correct copy of the Fourth AOM is attached hereto as **Exhibit 15**.

39.     On April 4, 2016, DRRF Trust, by DRRF II SPE, LLC as Administrator with delegated authority under the transaction documents, assigned the Security Deed to MountainView pursuant to that Assignment of Deed of Trust recorded on May 9, 2016 in the land

records of Floyd County, Georgia, book 2464 pages 432-433 (the "**Fifth AOM**"). A true and correct copy of the Fifth AOM is attached hereto as **Exhibit 16**.

40.     On April 29, 2016, MountainView assigned the Security Deed to MVMF III pursuant to that Assignment of Security Deed recorded on May 31, 2016 in the land records of Floyd County, Georgia, book 2466 page 905 (the "**Sixth AOM**"). A true and correct copy of the Sixth AOM is attached hereto as **Exhibit 17**.

41.     Brewster's servicers' mistakes and misapplications of payments continued until servicing of the loan was transferred to Statebridge. At the time of the transfer to Statebridge, Brewster had remitted 16 payments in the amount of $1,019.55 each, rendering the arrearage cured. In addition, Brewster was current on his post-petition payment obligations when servicing of the loan was transferred to Statebridge.

42.     Upon information and belief, Brewster made multiple payments to Statebridge while it serviced the Claim. Notwithstanding such payments, upon information and belief, Statebridge failed to properly account for Brewster's payments.

43.     On June 8, 2016, Statebridge sent Brewster a welcome letter informing Brewster that Statebridge was Brewster's new mortgage servicer. On June 17, 2016, Statebridge sent Brewster a Notice of Intent to Accelerate the loan. The notice states that Brewster "failed to pay the 1/1/2016 payment and the payment(s) due thereafter." On July 1, 2016, Statebridge sent Brewster a Notice of Returned Payment, stating that Brewster's checks numbered 9018 and dated June 14, 2016 in the amount of $3,363.81 and numbered 9020 dated June 16, 2016 in the amount of $1,019.55 were returned to Brewster because they did not bring the account current. True and correct copies of the welcome letter, the Notice of Intent to Accelerate, the Notice of Returned Payment, and the returned checks are attached hereto as **Exhibit 18**.[1]

44.     On July 14, 2016, Brewster's counsel informed Statebridge via letter of the Bankruptcy Case and of treatment of the Claim in the confirmed Plan. Brewster's counsel

---

[1] Check number 9018 is dated June 7, 2016 and check number 9020 is dated June 9, 2016.

informed Statebridge that their acceleration of the Claim violates the Court's Confirmation Order. Brewster's counsel further informed Statebridge that Brewster would re-submit his June 7 and June 9, 2016 checks and that Statebridge must accept such payment as timely. A true and correct copy of the correspondence is attached hereto as **Exhibit 19**.

45.      On July 29, 2016, Brewster's counsel sent a follow-up letter to Statebridge informing them that pursuant to the Court's Claim Objection Order, the arrearage on the Claim was satisfied in full and that Brewster is current on his obligations under the Plan with respect to the claim. A true and correct copy of the correspondence is attached hereto as **Exhibit 20**.

46.      On August 31, 2016, Statebridge replied to the letters from Brewster's counsel dated July 14, 2016 and July 29, 2016. Statebridge stated that when service of the Claim transferred from BSI Financial Services, Inc. to Statebridge on May 9, 2016, the loan did not show "bankruptcy information" and was not treated as such. Statebridge acknowledged that the arrearage on the Claim had been paid in full and that Brewster was due for the September 1, 2016 payment. Statebridge further stated that late charges in the amount of $1,759.68, escrow advances in the amount of $3,807.05, and miscellaneous fees in the amount of $1,210.00 ($6,776.73 total) had all been waived. Statebridge stated that the loan was not in default and apologized for the inconvenience to Brewster. A true and correct copy of the correspondence is attached hereto as **Exhibit 21**.

47.      After the August 31, 2016 letter, Brewster believed the matter to be resolved. Because he was current and the loan was not in default, Brewster believed that if he continued to remit his monthly payments as required under the confirmed Plan that he would remain current and would no longer be harassed by any servicer of the Claim.

48.      On November 15, 2016, Brewster's counsel sent Statebridge another letter stating that Statebridge had erroneously reported missed payments on Brewster's account and asking that Statebridge correct its reporting and verify the same to Brewster and Brewster's counsel. A true and correct copy of the correspondence is attached hereto as **Exhibit 22**.

49.     Notwithstanding Statebridge's representation to Brewster that Brewster's account had been corrected and was current, and notwithstanding that Statebridge's prior refusal to accept payments was in error (as admitted by Statebridge), Statebridge refused and returned Brewster's April 2017 payment on the Claim.

50.     On April 24, 2017, Brewster's counsel sent Statebridge another letter stating that Statebridge had rejected Brewster's payments in violation of Brewster's confirmed Plan and that Statebridge had not yet corrected Brewster's credit report to remove the erroneously reported late or missed payments on the Claim. A true and correct copy of the correspondence is attached hereto as **Exhibit 23**.

51.     On April 28, 2017, Statebridge responded that it was reviewing the April 24, 2017 letter and the loan. A true and correct copy of the correspondence is attached hereto as **Exhibit 24**.

52.     Notwithstanding the April 24, 2017 letter and Statebridge's April 28, 2017 response, Statebridge continued to refuse and return payments, including the May 2017, June 2017, July 2017, and August 2017 payments. Brewster received notice that his tendered payments had been refused by Statebridge. Copies of emails to Brewster regarding his refused payments and a ledger of his refused payments is attached hereto as **Exhibit 25**. The ledger shows that Statebridge refused Brewster's June 2016 payment as set out above, but then accepted Brewster's monthly payments until April 2017 when, without any apparent explanation, Statebridge began refusing all payments in violation of Brewster's confirmed Plan.

53.     Servicing of the Claim was transferred to Fay on or before September 2017—while Statebridge was simultaneously refusing payments in violation of the confirmed Plan.

54.     On October 10, 2017, MVMF III assigned the Security Deed to CVI LCF pursuant to that Assignment of Security Deed recorded on November 14, 2017 in the land records of Floyd County, Georgia, book 2524, page 1022 (the "**Seventh AOM**"). A true and correct copy of the Seventh AOM is attached hereto as **Exhibit 26**.

55.     Continuing Statebridge's pattern of refusing payments in violation of Brewster's confirmed Plan, Fay refused and returned Brewster's September 2017, October 2017, November 2017, and December 2017 tendered payments. Copies of emails to Brewster regarding his refused payments are attached hereto as **Exhibit 27.**

56.     On December 6, 2017, Brewster's counsel sent a letter to Fay informing Fay that its refusal of Brewster's payments was a violation of Brewster's confirmed Plan. A true and correct copy of the correspondence is attached hereto as **Exhibit 28**. As a result of water damage to the Property, Brewster submitted and received payment from Brewster's insurer. Fay refused to release the insurance funds. In the December 6, 2017 letter, Brewster's counsel informed Fay that it was obligated to release the funds to Brewster.

57.     Fay responded to the December 6, 2017 letter on December 13, 2017, acknowledging receipt of the December 5, 2017 letter and stating that it would respond within 30 business days. A true and correct copy of the correspondence is attached hereto as **Exhibit 29**.

58.     On January 24, 2018, Fay sent a letter to Brewster's counsel alleging that Brewster provided incorrect account information when attempting to set up electronic bill pay based on the emails received by Brewster and attached as Exhibit 27. Those emails state that the payment was returned due to an invalid account number, with no indications regarding which account number was invalid and who was the party responsible for the incorrect account number. A true and correct copy of the letter is attached hereto as **Exhibit 30**.

59.     Fay continued its pattern of refusing Brewster's tendered payments in violation of the confirmed Plan by refusing the January 2018, February 2018, March 2018, April 2018, May 2018, and June 2018 tendered payments. Copies of emails to Brewster regarding his refused payments are attached hereto as **Exhibit 31.**

60.     On November 7, 2018, Fay sent a Notice of Servicing Transfer to Brewster stating that Rushmore would be Brewster's new servicer and would accept all payments made on or after December 3, 2018. The notice stated that Fay would stop accepting payments from Brewster on

December 2, 2018. A true and correct copy of the correspondence is attached hereto as **Exhibit 32**.

61.    On November 10, 2018, Fay sent a Mortgage Statement to Brewster stating that $75,826.12 was due on December 1, 2018. A true and correct copy of the statement is attached hereto as **Exhibit 33**. In the statement, Fay asserts that Brewster's account history shows no payments for June through November 2018 notwithstanding Brewster's tender of each of these payments.

62.    On December 5, 2018, CVI LCF assigned the Security Deed to MTGLQ pursuant to that Assignment of Security Deed recorded on December 21, 2018 in the land records of Floyd County, Georgia, book 2567 pages 501-502 (the "**Eighth AOM**"). A true and correct copy of the Eighth AOM is attached hereto as **Exhibit 34**.

63.    On January 30, 2019, Rushmore, continuing each servicer's pattern of attempting to foreclose on the Property, sent Brewster a Notice of Intent to Foreclose on the Property for Brewster's alleged missed payments. On February 7, 2019, Brewster's counsel sent Rushmore a letter stating that Rushmore's attempted foreclosure is a violation of Brewster's confirmed Plan. A true and correct copy of the correspondence is attached hereto as **Exhibit 35**.

64.    Brewster's counsel followed the February 7, 2019 letter with another letter dated March 6, 2019 highlighting the repeated failure to accept payments on the Claim, demanding that Rushmore cease all foreclosure activity on the Property, and inquiring about a loan modification to reconcile the loan history. A true and correct copy of the correspondence is attached hereto as **Exhibit 36**.

65.    On March 15, 2019, Rushmore replied to the February 7, 2019 and March 6, 2019 letters stating that Fay did not note the bankruptcy history on the loan when service was transferred to Rushmore and that Fay's failure to note the bankruptcy led Rushmore to believe the loan was in default. Pursuant to the March 15, 2019 letter, Rushmore advised Brewster to disregard the January 30, 2019 Notice of Intent to Foreclose, which had been sent erroneously,

and apologized to Brewster for "any inconvenience or frustration that may have resulted from that oversight." A true and correct copy of the March 15, 2019 correspondence is attached hereto as **Exhibit 37**.

66.     Near the end of 2019, servicing of the Claim was transferred to SN Servicing.

67.     On April 23, 2020, MTGLQ assigned the Security Deed to Tiki IV pursuant to that Assignment of Mortgage recorded on September 14, 2020 in the land records of Floyd County, Georgia, book 2643 pages 32-33 (the "**Ninth AOM**"). A true and correct copy of the Ninth AOM is attached hereto as **Exhibit 38**.

68.     On June 4, 2020, Brewster's counsel sent a letter to SN Servicing informing SN Servicing of the violations of Brewster's confirmed Plan. A true and correct copy of the correspondence is attached hereto as **Exhibit 39**.

69.     On June 9, 2020, Tiki IV assigned the Security Deed to Cabana IV pursuant to that Assignment of Security Deed recorded on September 14, 2020 in the land records of Floyd County, Georgia, book 2643 pages 36-37 (the "**Tenth AOM**"). A true and correct copy of the Tenth AOM is attached hereto as **Exhibit 40**.

70.     On September 29, 2020, SN Servicing sent Brewster a Notice of Attempt to Collect Debt stating that Brewster was in default on the Claim and due for the June 2017 payment. SN Servicing stated that Brewster owed $134,433.50 and that it would refuse any payments tendered that did not cure the entire amount. A true and correct copy of the notice is attached hereto as **Exhibit 41**.

71.     On December 9, 2020, SN Servicing sent Brewster another Notice of Attempt to Collect Debt stating that Brewster was in default on the claim and due for the June 2017 payment. SN Servicing stated that Brewster owed $141,196.36 and that it would refuse any payments tendered that did not cure the entire amount. A true and correct copy of the notice is attached hereto as **Exhibit 42**.

72.     On January 6, 2021, counsel for Brewster responded to SN Servicing's September 29, 2020 and December 9, 2020 notices with a Notice of Violation of Court Injunction sent to SN Servicing and Cabana IV. In the notice, Brewster's counsel once again informed SN Servicing of Brewster's confirmed Plan and SN Servicing's predecessors' failures to accept and properly apply payments. In the notice, Brewster requested that SN Servicing: (1) provide Brewster with monthly statements showing (i) the current outstanding amount (free of any late fees, default interest or other such charges), and (ii) the monthly payments of $3,170.83 as required under the bankruptcy plan; (2) accept such monthly payments in satisfaction of Brewster's obligations to SN Servicing and U.S. Bank; and (3) allow any arrearage caused by SN Servicing's predecessors' bad faith refusal of Brewster's payments to be paid at the end of the current outstanding term. A true and correct copy of the notice is attached hereto as **Exhibit 43**.

73.     On February 23, 2021, SN Servicing responded to the January 6, 2021 notice with a letter outlining corrective actions SN Servicing took with respect to Brewster's account and stating that SN Servicing would consider Brewster for a loan modification, conditioned upon his resuming payments to SN Servicing. Included with the letter was a spreadsheet that counsel for SN Servicing described as "the reconciled account spreadsheet" (the "**Pay History**"). A true and correct copy of the February 23, 2021 letter and the Pay History are attached hereto as **Exhibit 44**.

74.     Notwithstanding SN Servicing's attempts to reconcile Mr. Brewster's account, the Pay History provided by SN Servicing reflects an absolute mess. Mr. Brewster's regular monthly mortgage payments and his payments toward the arrears on the loan were seemingly mixed and applied at random. The loan transferred to Statebridge for the May 1, 2016 payment, but Statebridge apparently has no records for the loan, so SN Servicing apparently assumed that one payment had been made each month during the 14 months that Statebridge serviced the loan and that no other funds had been received by Statebridge. The Pay History shows that the loan was transferred to Rushmore and indicates that there were "NO PAYMENTS RECEIVED." The

Pay History then shows a transfer to SN Servicing. The Pay History shows a due date on the loan of June 1, 2017.

75.     After receipt of the February 23, 2021 letter from SN Servicing, Brewster expressed his interest in applying for a loan modification. In accordance with the conditions precedent to applying for a loan modification presented in the February 23, 2021 letter from SN Servicing, Brewster resumed payment on the loan beginning March 4, 2021 for the March 2021 payment, and on or before the first of each month thereafter through the February 2022 payment.[2]

76.     Brewster received and completed his loan modification application. He submitted the loan modification application to SN Servicing on May 4, 2021. A true and correct copy of Mr. Brewster's loan modification application is attached hereto as **Exhibit 45**.

77.     On August 13, 2021, SN Servicing provided Brewster with a Modification Trial Period Plan (the "**Trial Mod**") and indicated that Brewster would need to provide an executed copy to SN Servicing by August 20, 2021—seven days later—for the Trial Mod to be considered. A true and correct copy of the Trial Mod is attached hereto as **Exhibit 46**.

78.     SN Servicing's proposed terms under the Trial Mod are: (a) Interest-bearing principal balance: $569,757.66; (b) No deferred-interest principal; (c) Interest rate: 4.50%; and (d) Term: 240 months (fully amortizing). The Trial Mod required two "good faith" monthly payments of $3,170.83 followed by an increase in the monthly payment to $3,604.57 per month for the duration of the term.

79.     After reviewing the Trial Mod, Brewster had two specific questions for the SN Servicing. First, Brewster asked why the principal balance of the Trial Mod was $569,757.66 when (i) the Pay History shows a principal balance of $531,486.65 as of February 17, 2021, and (ii) Brewster had made, at that time, six payments in the amount of $3,170.83 to SN Servicing, which should have decreased the principal balance rather than increasing it by $38,271.01. Second,

---

[2] As of the filing of this Complaint, the February 2022 payment is the most recent payment due.

Brewster asked why SN Servicing proposed an interest rate of 4.50% when the original interest rate on the loan was 2.875% and interest rates were then at all-time lows.

80.     As to the increase in principal balance, SN Servicing stated that the principal balance is based on the current unpaid balance, plus interest accruing through September 1, 2021, less the two good faith payments proposed in the Trial Mod. This does not explain why the principal balance increased $38,271.01 over SN Servicing's prior asserted balance. Upon further inquiry, SN Servicing stated that the increased balance was "the result of capitalizing the arrearages into the balance." The Pay History shows no arrearage.

81.     As to the increase in interest rate, SN Servicing stated that the 4.5% rate was simply the rate SN Servicing was offering for loan modifications with no further explanation. As a result of further negotiation between Brewster and SN Servicing, SN Servicing offered an interest rate of 4.0% on November 4, 2021. After further questioning on the basis for the 4.0% interest rate, SN Servicing withdrew its offer for the Trial Mod that same day.

82.     On January 7, 2022, SN Servicing sent Brewster a Notice of Default under Confirmation Order Entered June 20, 2014. In the notice, SN Servicing states that Brewster is in default of his confirmed Plan and that a total of $143,138.18 was due on the loan. Notably, this notice states that the loan is contractually due for the June 1, 2018 payment rather than the July 1, 2017 payment asserted in SN Servicing's previous correspondence. Thus, SN Servicing confirms in the notice that Brewster made the 11 payments that had come due on the Claim in the 11 months between when negotiations for a loan modification began and when SN Servicing sent the January 7, 2022 notice. A true and correct copy of the notice is attached as **Exhibit 47**.

83.     Pursuant to section 10.6.1 of the confirmed Plan, Defendants are bound by the provisions of the Plan. Moreover, the confirmed Plan operates as a binding contract between Brewster and Defendants. *See Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002) ("A confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations."); *see also* 11 U.S.C. § 1141(a)

("the provisions of a confirmed plan bind the debtor, . . . any entity acquiring property under the plan, and any creditor, . . . whether or not such creditor . . . has accepted the plan").

84.    Pursuant to Section 10.3 of the Plan, and Paragraph 6 of the Final Decree, Defendants are enjoined from taking actions in violation of the Plan.

85.    Even though Defendants are bound by the Plan, the Confirmation Order, and the Final Decree, Defendants have failed to properly apply payments made by Brewster on U.S. Bank's Claim.

## COUNT I
### ACCOUNTING

86.    Brewster incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

87.    Brewster is the lawful owner of the Property and is entitled to an accounting of all funds received by Defendants.

88.    Wherefore, Brewster requests that the Court order an accounting from Defendants of all funds paid to Defendants under or in connection with the Claim, Security Deed, and transactions since the Petition Date which are the subject matter of this Complaint including an itemized payoff on the Claim.

## COUNT II
### CITATION FOR CONTEMPT FOR VIOLATING THE
### CONFIRMATION ORDER AND FINAL DECREE

89.    Brewster incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

90.    The Court entered the Confirmation Order on June 20, 2014 confirming the Plan and retaining jurisdiction over all matters arising out of and related to the Bankruptcy Case and the Plan.

91.    Class 4 of the Plan provides for the treatment of the Claim.

92.    The Final Decree enjoins Defendants from pursuing additional attempts to collect from Brewster regarding the Claim in contravention of the Plan.

93.    By seeking to assert claims and collection efforts contrary to the language of the Plan, Defendants are violating the Plan, the Confirmation Order, the Claim Objection Order, and the Final Decree (collectively, the "**Bankruptcy Court Orders**"). Without limitation of the foregoing, Brewster has repeatedly tendered payments to Defendants, but many such payments were returned or misapplied. Moreover, the Plan does not authorize Defendants to accelerate their claim or otherwise utilize their chosen enforcement mechanisms on account of Defendants' failures to comply with the Plan and Bankruptcy Court Orders.  Accordingly, Defendants knowingly violated the Bankruptcy Court Orders.

94.    Brewster is therefore entitled to a judgment for contempt of Court against Defendants, including the imposition of sanctions until Defendants purge themselves of said contempt by actions, including, cessation of all foreclosure attempts and demands for possession and eviction in violation of the Bankruptcy Court Orders and requiring Defendants to pay all damages incurred by Brewster based upon Defendants' violations of the Bankruptcy Court Orders and other actions set forth in this Complaint (including but not limited to Brewster's attorney's fees prior to and during this action) in an amount to be established at trial.

95.    Defendants should also be required to pay all damages incurred by Brewster based upon Defendants' violations of the Bankruptcy Court Orders and other actions set forth in this Complaint (including but not limited to Brewster's attorney's fees) in an amount to be established at trial.

### COUNT III
### TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

96.    Brewster incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein

97.    Brewster is entitled to injunctive relief to restrain Defendants from seeking to foreclose on the Property and taking any other unlawful or improper action against Brewster in contravention of the Plan.

98.     If this Court does not enter a temporary restraining order and injunction preventing Defendants from continuing their collection efforts and prosecution of potential foreclosure and demands for possession and eviction regarding the Property, including an eviction action, Brewster will suffer irreparable injury.

99.     Brewster's injury includes emotional distress and turmoil resulting from the uncertainty facing his living situation.

100.    The threatened injury to Brewster outweighs any harm to Defendants that an injunction may cause.

101.    There is a substantial likelihood that Brewster will succeed on the merits of this dispute.

102.    The grant of a temporary restraining order and interlocutory and permanent injunction in this matter will not disserve the public interest.

103.    Brewster has no adequate remedy at law.

104.    A temporary restraining order and preliminary injunction will maintain the status quo until this dispute is resolved and a permanent injunction is entered. Such relief will not substantially inconvenience any of the parties involved.

105.    Brewster requires immediate injunctive relief because Defendants' demands for payment, if pursued, could significantly interfere with Brewster's life stability and his ability to generate income and adversely affect Brewster's ability to pay his creditors as and when due. If the injunction is not entered against Defendants, Brewster will likely be forced out of his Property. Defendants will then gain access to the Property and could make irreversible changes or significantly damage or alter the Property.

106.    Brewster requests a temporary restraining order, interlocutory injunction, and permanent injunction prohibiting Defendants from taking any action in furtherance of their pre-bankruptcy claims against Brewster, including prosecution of the demand for possession and

eviction regarding the Property or other enforcement of any potential foreclosure, in contravention of the Plan, Confirmation Order, and Final Decree.

## COUNT IV
### BREACH OF CONTRACT

107.    Brewster incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

108.    Brewster's confirmed Plan constituted a contract with Defendants and its terms describes their rights and obligations.

109.    Brewster was required to make payments to Defendants pursuant to the confirmed Plan, and Defendants were obligated to accept payments made to Defendants pursuant to the confirmed Plan and apply them to the Defendants' Claim as set forth in the Bankruptcy Court Orders.

110.    Defendants breached their contractual obligations under the Plan by disregarding its binding provisions and refusing Brewster's tendered payments.

111.    Class 4 of the Plan set forth the material terms of the parties' new agreement.

112.    Following confirmation of the Plan, Brewster was obliged to pay Defendants 18 monthly installments of $1,019.55, which Brewster has paid. Following confirmation of the Plan, Brewster was (and remains) obliged to pay Defendants monthly installment payments of $3,170.83.

113.    Defendants are liable to Brewster for damages arising from their breach of the contractual agreement created by confirmation of the Plan.

114.    Wherefore, Brewster is entitled to judgment against Defendants in an amount to be determined by the finder of fact.

## COUNT V
### DECLARATORY JUDGMENT

115.    Brewster incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

116.    This Court has the power to interpret the Plan and its order and to declare the parties' rights pursuant to the Plan and the Bankruptcy Court Orders.

117.    This case involves an actual controversy in which Brewster and Defendants are asserting adverse positions regarding the Plan, Claim Objection Order, and Final Decree and their respective rights and obligations thereunder.

118.    Specifically, Defendants' course of conduct is inconsistent with the plain language of the Claim Objection Order, Plan, Confirmation Order and Final Decree.

119.    Wherefore, Brewster seeks entry of a judgment declaring that no uncured default exists and confirming that Defendants are obligated to honor and abide by the terms of the Plan and Final Decree.

## COUNT VIII
### PUNITIVE DAMAGES

120.    Brewster incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

121.    Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to consequences.

122.    Wherefore, Brewster is entitled to an award of punitive damages in amount deemed reasonable and just.

## COUNT VII
### ATTORNEY'S FEES

123.    Brewster incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

124.    Defendants have acted in bad faith, been stubbornly litigious, and caused Brewster unnecessary trouble and expense. Defendants have continued to misapply payments and make demands based on previously misapplied and refused payments despite acknowledging and knowing such actions are in violation of the Plan and Bankruptcy Court Orders.

125.    Pursuant to O.C.G.A. § 13-6-11, Brewster is entitled to recover all attorney's fees and expenses of litigation incurred in bringing this action in an amount to be proven at trial.

126.    Wherefore, Brewster demands an award of attorney's fees and costs in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Brewster prays for and requests the following relief:

A.    That this Court exercise its subject matter jurisdiction in this matter;

B.    That this Court exercise its jurisdiction over the parties herein;

C.    That Defendants be compelled, pursuant to Summons and judicial process, to appear and answer the well-pled allegations of this Complaint;

D.    For judgment against Defendants on all Counts;

E.    That Brewster receive a judgment against Defendants ordering that Defendants pay attorney's fees in connection with the subject matter of this Complaint;

F.    For a trial by jury; and

G.    That Brewster receive all other and further relief deemed appropriate by this Court.

Respectfully submitted this 8th day of February, 2022.

**JONES & WALDEN LLC**

*/s/ Aaron Anglin*
Aaron Anglin
Georgia Bar No. 585863
Leslie Pineyro
Georgia Bar No. 969800
Attorneys for Stephen Brewster
699 Piedmont Ave., NE
Atlanta, Georgia 30308
(404) 564-9300
aanglin@joneswalden.com
lpineyro@joneswalden.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| STEPHEN H. BREWSTER, | CHAPTER 11 |
| Debtor. | CASE NO. 14-40039-PWB |
| STEPHEN H. BREWSTER, | ADVERSARY PROCEEDING |
| Plaintiff, | NO. 22-_____ |
| v. | |
| CRIMSON PORTFOLIO, LLC, CRIMSON PORTFOLIO ALPHA, LLC, DRRF II SPE, LLC, DRRF TRUST 2015-1, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, MOUNTAINVIEW MORTGAGE OPPORTUNITIES FUND III TRUST I, WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR MVMF III, TRUST B, STATEBRIDGE COMPANY, LLC, FAY SERVICING, LLC, U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR CVI LCF MORTGAGE LOAN TRUST I, RUSHMORE LOAN MANAGEMENT SERVICES LLC, MTGLQ INVESTORS, L.P., US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST, U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES IV TRUST, and SN SERVICING CORPORATION, | |
| Defendants. | |

<u>VERIFICATION</u>

COMES NOW Stephen H. Brewster, under penalty of perjury, and states that the facts and allegations contained in the "Complaint for Injunction and Other Relief" are true and correct.

This ___ day of February, 2022.

_____
Stephen H. Brewster

Sworn to and subscribed before me
this ___ day of February, 2022.

_____
Notary Public
My Commission Expires: 3/15/2025