**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| **STEPHEN H. BREWSTER,** | CHAPTER 11 |
| Debtor. | CASE NO. 14-40039-PWB |
| **STEPHEN H. BREWSTER,** | ADVERSARY PROCEEDING |
| Plaintiff, | NO. 22-04007-PWB |
| v. | |
| **CRIMSON PORTFOLIO, LLC, CRIMSON PORTFOLIO ALPHA, LLC, DRRF II SPE, LLC, DRRF TRUST 2015-1, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, MOUNTAINVIEW MORTGAGE OPPORTUNITIES FUND III TRUST I, WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR MVMF III, TRUST B, STATEBRIDGE COMPANY, LLC, FAY SERVICING, LLC, U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR CVI LCF MORTGAGE LOAN TRUST I, RUSHMORE LOAN MANAGEMENT SERVICES LLC, MTGLQ INVESTORS, L.P., US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST, U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES IV TRUST, and SN SERVICING CORPORATION,** | |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS BY (1) U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE TIKI SERIES IV TRUST, (2) U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES IV TRUST, AND (3) SN SERVICING CORPORATION**

Plaintiff Stephen H. Brewster ("Plaintiff") hereby files this response (the "Response") in opposition to the *Motion for Judgment on the Pleadings by (1) U.S. Bank Trust National Association, as Trustee of the Tiki Series IV Trust, (2) U.S. Bank Trust National Association, as*

*Trustee of the Cabana Series IV Trust, and (3) SN Servicing Corporation* (Doc. No. 60) (the "Motion for Judgment") filed on April 28, 2022. For the reasons set forth below, Plaintiff requests that the Court deny the Motion for Judgment.

## BACKGROUND

1.　　Plaintiff initiated this adversary proceeding (this "Proceeding") on February 8, 2022 by the filing of a *Complaint for Injunction and Other Relief* (Doc. No. 1) (the "Complaint") seeking: (a) an accounting of all funds received by Defendants from Plaintiff; (b) a citation for contempt of Court against Defendants U.S. Bank Trust National Association, as Trustee of the Tiki Series IV Trust ("Tiki Trust"), U.S. Bank Trust National Association, as Trustee of the Cabana Series IV Trust ("Cabana Trust") and SN Servicing Corporation ("SN Servicing", and together with Tiki Trust and Cabana Trust, the "Movants"), (c) an injunction restraining Movants from taking action in violation of the Plan, Confirmation Order, and Final Decree; (d) a judgment for breach of contract and damages; (e) a declaratory judgment interpreting Plaintiff's confirmed Chapter 11 Plan of Reorganization; (f) punitive damages; and (g) attorney's fees for bringing this action as a result of Defendants' violation of the Plan, Confirmation Order, and Claim Objection Order.

2.　　The Complaint lays out: (a) the long history of the subject Loan[1] as it passed from one owner to another, and (b) the equally long history of the owners of the subject loan failing to abide by Plaintiff's confirmed Plan. Some of the transfers of ownership of the Loan were accompanied by simultaneous corresponding transfers of servicing of the subject Loan. Tiki Trust and Cabana Trust were two such owners of the Loan, and SN Servicing was one such servicer of the Loan.

3.　　On April 29, 2005, Plaintiff executed a Security Deed (the "Security Deed") granting Citizens First Bank a security interest in the Property.

---

[1] Capitalized terms in this Response shall have the same meaning as set forth in Plaintiff's Complaint which is adopted herein.

2

4. On January 6, 2014 (the "Petition Date"), Plaintiff initiated the above-referenced Chapter 11 bankruptcy case (the "Bankruptcy Case").

5. On April 15, 2014, Defendant Crimson Portfolio, LLC ("Crimson Portfolio") filed proof of claim number 11 (the "Claim") in the Bankruptcy Case. Per the Claim, Crimson Portfolio asserted that Plaintiff owed $635,342.89 to Crimson Portfolio as of the Petition Date, consisting of: (i) principal in the amount of $626,606.87, and (ii) interest in the amount of $8,736.02. Crimson Portfolio also asserted that Plaintiff was in arrears $30,865.82 on the Loan.

6. On June 20, 2014, the Bankruptcy Court entered the confirmation order (14-40039, Doc. No. 103) (the "Confirmation Order") confirming Plaintiff's Plan of Reorganization (14-40039, Doc. Nos. 71 and 98) (the "Plan" as modified or amended).

7. On April 23, 2020, MTGLQ Investors, LP ("MTGLQ") assigned the Security Deed to Tiki Trust pursuant to that Assignment of Mortgage recorded on September 14, 2020 in the land records of Floyd County, Georgia, book 2643 pages 32-33. Servicing of the Claim was transferred to SN Servicing near the end of 2019.

8. On June 9, 2020, Tiki Trust assigned the Security Deed to Cabana Trust pursuant to that Assignment of Security Deed recorded on September 14, 2020 in the land records of Floyd County, Georgia, book 2643 pages 36-37.

9. On September 29, 2020, SN Servicing sent Brewster a Notice of Attempt to Collect Debt stating that Brewster was in default on the Claim and due for the June 2017 payment. SN Servicing stated that Brewster owed $134,433.50 and that it would refuse any payments tendered that did not cure the entire amount. Complaint ¶ 70, Exhibit 41.

10. On December 9, 2020, SN Servicing sent Brewster another Notice of Attempt to Collect Debt stating that Brewster was in default on the claim and due for the June 2017 payment. SN Servicing stated that Brewster owed $141,196.36 and that it would refuse any payments tendered that did not cure the entire amount. Complaint ¶ 71, Exhibit 42.

11. On February 23, 2021, SN Servicing sent Plaintiff a letter outlining corrective actions SN Servicing took with respect to Brewster's account and stating that SN Servicing would consider Brewster for a loan modification, conditioned upon his resuming payments to SN Servicing (the "February 23 Correspondence"). Complaint ¶ 73, Exhibit 44. In the February 23 Correspondence, SN Servicing acknowledged their predecessor's deficiencies with respect to the Loan and stated that it "inherited a mess." Complaint Exhibit 44 at 4.

12. After receipt of the February 23 Correspondence from SN Servicing, Plaintiff expressed his interest in applying for a loan modification. Upon assurances that SN Servicing would accept his payments, Plaintiff resumed payment on the Loan beginning March 4, 2021 for the March 2021 payment, and on or before the first of each month thereafter through the February 2022 payment. Complaint ¶ 75.

13. Thereafter, Plaintiff attempted to enter into a loan modification with Movants, but Movants failed to justify their terms and Plaintiff did not agree to their terms. Complaint ¶ 78-81.

14. Notwithstanding Plaintiff's continued payments to SN Servicing, on January 7, 2022, SN Servicing sent Plaintiff a Notice of Default under Confirmation Order Entered June 20, 2014. Complaint ¶ 82, Exhibit 47. In the notice, SN Servicing states that Plaintiff is in default of his confirmed Plan and that a total of $143,138.18 was due on the loan. Notably, this notice states that the loan is contractually due for the June 1, 2018 payment rather than the July 1, 2017 payment asserted in SN Servicing's previous correspondence. SN Servicing confirmed in the notice that Plaintiff made the 11 payments that had come due on the Claim after SN Servicing reversed its prior stated position that it would refuse Plaintiff's payments.

## STANDARD FOR JUDGMENT ON PLEADINGS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c), made applicable to this adversary

4

proceeding by Fed. R. Bankr. P. 7012.[2] Movants assert that they have answered Plaintiff's Complaint and so the pleadings are closed. However, Movants have filed crossclaims against other defendants alleging the same facts alleged by Plaintiff in the Complaint, which those defendants have not answered. *See* Doc. Nos. 16, 17, and 18. Accordingly, Plaintiff does not agree that the pleadings are closed or that the Motion for Judgment is properly before the Court. Notwithstanding Movants' procedural defects, Plaintiff will respond to the Motion for Judgment as if it were not procedurally deficient.

"[T]he difference between Rules 12(b)(6) and 12(c) is purely procedural, as the same standards govern both motions." *Rinaldo v. Komar*, No. 05-3037 (JBS), 2007 U.S. Dist. LEXIS 2657, at *6 (D.N.J. Jan. 12, 2007). Thus, the standard that the Court is to apply to the Motion for Judgment is the same as that of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Dismissal of a complaint is appropriate if it fails "to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012. This Rule is construed with Rule 8(a) which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7008. To survive a motion to dismiss under this standard, a complaint must "contain factual allegations that are 'enough to raise a right to relief above the speculative level.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). A plaintiff need not specifically plead every element of his cause of action, but "a complaint must still contain enough information regarding the material elements of a cause of action to support recovery under some viable legal theory." *Am. Fed'n of Labor & Cong. of Indus.*

---

[2] As used herein, "Rule[s]" refers to Federal Rules of Civil Procedure, and "Bankruptcy Rule[s]" refers to Federal Rules of Bankruptcy Procedure.

5

*Organizations v. City of Miami, FL*, 637 F.3d 1178, 1186 (11th Cir. 2011) (internal quotations omitted).

When considering a motion to dismiss, courts restrict their inquiry to the legal sufficiency of the allegations in the Complaint and whether those allegations set forth facts as opposed to labels or mere conclusory statements. *See Howell v. U.S. Foods (In re Bilbo)*, 2014 WL 689097, at *3 (Bankr. N.D. Ga. Feb. 5, 2014) (Drake, J.) (citing *Iqbal*, 556 U.S. at 678). Even if a complaint fails to allege facts sufficient to state a plausible claim for relief explicitly, a court may infer elements of a cause of action from the facts presented, but the complaint must allege facts upon which the Court may infer the elements. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1272 (11th Cir. 2009) (finding that allegations in the complaint were sufficient to generate an inference of the elements of the underlying cause of action). After determining which allegations in a complaint are well-pled facts and which are legal conclusions, a court must accept all well-pled facts as true and must construe those facts and the complaint in the light most favorable to the plaintiff. *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1324 (11th Cir. 2017); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 856 F.3d 1338, 1339 (11th Cir. 2017).

**ANALYSIS AND ARGUMENT**

### I. *Plaintiff is entitled to an accounting.*

Plaintiff tendered payments on the subject Loan to Movants as well as to Movants' predecessors in interest. Each owner and servicer prior to the current owner and servicer maintained (or should have maintained) an accounting of all amounts received and applied to the subject Loan. Movants should have received those records. Movants assert that "an equitable accounting is clearly not necessary or applicable in this case, as SN Servicing provided a detailed account history with its February 23 Correspondence" and "the payment history is more than sufficient for Plaintiff to identify other alleged payments that are unaccounted for." Motion for Judgment at 9. Movants also imply that Plaintiff is not entitled to an accounting because a party can only seek an accounting when the accounts are complicated and intricate. Motion for

6

Judgment at 8. As SN Servicing stated in its February 23, 2021 letter, "SN Servicing inherited a mess." Complaint Exhibit 44 at 4. Movants' predecessors made this residential mortgage account complicated by failing to properly accept and apply Plaintiff's payments. Moreover, Movants received an accounting from their predecessors when the subject Loan was acquired and Tiki Trust passed an accounting on to its successor when the subject Loan was sold. Plaintiff seeks that information from Movants as well as from the other defendants in this Proceeding.

## II.    The Complaint states a claim for contempt.

SN Servicing was Tiki Trust's and Cabana Trust's agent. As stated in the Complaint, SN Servicing sent Plaintiff a Notice of Attempt to Collect Debt on September 29, 2020 and again on December 9, 2020 asserting that Plaintiff was in default on the claim and that SN Servicing "would refuse any payments tendered that did not cure the entire amount." Complaint ¶ 71. After sending these notices informing Plaintiff that SN Servicing would not accept any tendered payments, Movants now state that they cannot be held in contempt because Plaintiff did not tender payments to them. "[A] tender is unnecessary where the person to whom the money is due states that the tender would be refused if made." *Grebel v. Prince*, 232 Ga. App. 361, 366 (1998). After acknowledging that they "inherited a mess" and notifying Plaintiff that they would refuse his tendered payments under the Plan, Movants now attempt to use their refusal to accept payments or repair their inherited mess as a shield. Immediately upon SN Servicing subsequently notifying Plaintiff that his payments would be accepted and applied to the Loan, Plaintiff tendered those payments to SN Servicing. Complaint ¶ 75.

Movants violated the terms of the Plan requiring Plaintiff's counterparty to the Security Deed to accept payments of $3,170.83 per month and apply them to the claim against Plaintiff based upon the Loan. Therefore, Plaintiff's Complaint states a claim against Movants for contempt of the Confirmation Order and Final Decree. *See Wendy Bivens, Plaintiff, v. NewRez LLC f/k/a New Penn Fin., LLC & d/b/a Shellpoint Mortg. Servicing & Citimortgage, Inc., Defendants (In re Bivens)*, No. AP 20-09018, 2021 WL 3418353, at *2 (Bankr. M.D.N.C. Mar. 25, 2021).

7

In *Williams v. CitiFinancial Servicing LLC (In re Williams)*, 612 B.R. 682, 693-94 (Bankr. M.D.N.C. 2020), the court held that where a creditor misapplies payments under a confirmed plan and then transfers the account with records showing an incorrect payment history and inflated loan balance, causing injury to the plaintiff, that those actions could constitute a violation of § 524(i). The *Williams* court found that § 524(i) applies to both current and previous claim holders and that transferring a "mortgage account with an inflated balance due to misapplied payments sufficient to constitute an act to collect for the purposes of withstanding a motion to dismiss under Rule 12(b)(6)". *Id*. *See also In re Dogar-Marinesco*, No. 09-35544 (CGM), 2016 Bankr. LEXIS 4111, at *26 (Bankr. S.D.N.Y. Dec. 1, 2016) ("A creditor may also be found to have violated the discharge injunction if it causes a subsequent servicer to send collection letters by failing to inform the new servicer of the bankruptcy."). As such, the facts pled in the Complaint were sufficient to state a plausible claim for violation of the § 524(i) discharge injunction.

Here, Plaintiff alleges claims for violation of the Confirmation Order rather than a discharge order, but the power of the Court to enforce its orders is the same. The Complaint alleges that Tiki Trust transferred the Loan to its successor, Cabana Trust, during a time when the loan balance was incorrect. Movants continued to enforce the erroneous Loan amount despite numerous notices to their predecessors which would, or should, have been included in the loan file passed to Movants.

Two courts have held that errors by a mortgage holder had the effect of undermining the integrity of the bankruptcy system and could be remedied under 11 U.S.C. § 105 by the Court. *The court in In re Fivecoate*, 634 B.R. 720, 730 (Bankr. D.S.C. 2021) (decided based on a Rule 3002.1 notice but finding authority under § 105), stated:

> By violating the terms of the Court's confirmation order through its misapplication of payments, by repeatedly making false representations to Debtor during the Court of the bankruptcy, by delaying any action to correct its errors until the conclusion of Debtor's case case, by increasing the attorney's fees and costs incurred by Debtor, and by effectively preventing Debtor's timely receipt of a discharge under § 1328(a) absent Court intervention, the combination of PHH's actions has had the effect of undermining the integrity of the bankruptcy system.

8

*Id.* at 730.

Likewise, the Court in *In re Kilgore*, 253 B.R. 179 (Bankr. S.C. 2000) (in the context of a Rule 11 motion) stated:

> the Court notes that [the mortgage company's] improper conduct resulted in significant consequences on Debtors, distorted the procedures relied upon by the Court, and caused a waste of judicial time and resources. As a sophisticated corporation that deals with mortgage accounts, even those of bankruptcy debtors, on a regular basis; Ames should reasonably and properly credit debtors' accounts for payments that are remitted and/or promptly respond to allegations of discrepancy and <u>report accurate information in its pleadings filed with this Court</u>.

*Id*. at 193. Accordingly, the Complaint states a claim for contempt.

Movants argue that the Complaint is "defective" as to Tiki Trust because Plaintiff made no payments to Tiki Trust and no notice or correspondence to Tiki Trust occurred while Tiki Trust owned the Security Deed. Motion for Judgment at 11-12. Even under the plausibility standard articulated in *Twombly* and *Iqbal*, however, a Plaintiff is not charged with having all of the facts prior to filing a complaint. The information regarding when Tiki Trust acquired the Loan and when Tiki Trust passed the Loan to Cabana Trust is the subject of Plaintiff's discovery requests to Movants. Plaintiff did not allege, and the Court should not infer, that the recorded assignments of mortgage accurately reflect the dates of ownership of the Loan. Plaintiff relied on the real property records of Floyd County, Georgia to determine ownership of the Loan and the approximate timeline regarding the passing of the Loan between owners because the property records are the best information Plaintiff can obtain prior to Movants' discovery responses. Without the information requested in Plaintiff's discovery requests, Plaintiff cannot know when Tiki Trust actually acquired the Loan or passed the Loan on to Cabana Trust. The Court can infer from the Complaint, however, that Tiki Trust passed the Loan on to Cabana Trust with all of the defects present in the "mess." The facts of this case have not been established as this case is still in its infancy. Movants' assertion that "no notice or correspondence to Plaintiff occurred while Tiki Trust owned the Security Deed" asserts facts beyond the pleadings and likely transforms their Motion for Judgment into a motion for summary judgment. In any event, Plaintiff's Complaint adequately pleads his claim for contempt.

### III. *Injunctive relief*

Movants ask for judgment on the pleadings as to the count for injunctive relief, claiming that injunctive relief is not appropriate because "the Complaint does not identify any pending foreclosure or other specific collection actions other than the January 7, 2022 *Notice of Default under Confirmation Order Entered June 20, 2014*." Motion for Judgment at 12. Movants further assert that "Plaintiff is in default, and Plaintiff has not alleged or tendered the defaulted amounts." Motion for Judgment at 13. As alleged by the Complaint in extraordinary detail, Movants and the other loan servicers who have held this Loan have consistently mishandled this Loan and reported inaccurate statements to the subsequent servicers.

As alleged in the Complaint, Plaintiff tendered at least 17 payments to Movants' predecessors that were refused and returned. Georgia law excuses the tender requirement when a creditor states it will refuse payments, *Grebel*, 232 Ga. App. at 366, and "[t]he law does not require a futile tender or other useless act." *Nowlin v. Davis*, 245 Ga. App. 821, 822 (2000). Plaintiff had every reason to believe that his eighteenth (and subsequent) payments would be refused as the prior 17 had, but that remains a matter of fact to be determined by the fact finder. In any event, the Court should not consider it a settled matter at this early stage of litigation.

Moreover, SN Servicing itself informed Plaintiff that it would not accept payments tendered that were not in the full amount that it showed owing on the Loan despite acknowledging that they "inherited a mess." Movants refused to support their asserted loan balance even upon Plaintiff's repeated inquiries. The ultimate effect is that Plaintiff requires the Court's assistance in straightening out this Loan after the mishandling by Movants and their predecessors. Thus, Plaintiff has included a count for injunctive relief. Plaintiff seeks an order from the Court requiring all Loan holders and servicers, past and present, to accurately report the correct payment information to all subsequent parties involved in this Loan and to the credit bureaus.[3] This

---

[3] To the extent that the Court determines that allegations in the Complaint need to be amended to clarify such requests, Plaintiff requests leave to amend to state the same.

10

requested relief includes Movants, who are currently in the position to foreclose on Plaintiff's property and are asserting that the Loan is in default. Moreover, as history has shown, if Movants pass this Loan on to the next owner and servicer with the same defects present, Plaintiff will be subjected to the same threats of foreclosure that he repeatedly received from Movants' predecessors.

### IV. The Complaint adequately alleges that Movants breached their obligations under the confirmed Plan.

Movants first argue that Plaintiff's claim for breach of contract fails because "there is no allegation that Plaintiff made all payments under the Plan. Plaintiff, in fact, has breached any contract created by confirmation of the Plan." Motion for Judgment at 13. As set forth above, Georgia law does not require a futile tender, *Nowlin*, 245 Ga. App. at 822, and excuses the tender requirement when a creditor states it will refuse payments. *Grebel*, 232 Ga. App. at 366. Movants' predecessors' repeated refusal to accept Plaintiff's payments rendered any further tender futile, and SN Servicing explicitly stated that it would refuse Plaintiff's tendered payments. Movants now seek to shift the blame for their and their predecessors' refusal to accept Plaintiff's payments onto Plaintiff and assert that Plaintiff breached the Plan rather than Movants and their predecessors. Georgia law simply does not support their position.

Movants next argue that "Plaintiff has not set forth how SN Servicing, Tiki Trust, and Cabana Trust breached any terms of the Plan. There is no allegation that these Movants misapplied or refused any tendered payments." Motion for Judgment at 14. Again, SN Servicing, in violation of the Plan, informed Plaintiff that it would not accept his payments.

Moreover, Tiki Trust and Cabana Trust took the Loan "subject to the same restrictions, limitations, and **defects** as it had in the hands of the assignor." *S. Telecom Inc. v. TW Telecom Inc. of Ga. L.P.*, 321 Ga. App. 110, 114 (2013) (emphasis added) (internal citations omitted). Tiki Trust passed the Loan on to Cabana Trust without correcting the errors present on the Loan when acquired. Cabana Trust continued to enforce the erroneous default and refused to accept payments from Plaintiff notwithstanding their knowledge that the Loan history was a "mess."

11

Movants are attempting to enforce greater rights than they (or the holders in the case of SN Servicing) possessed under the assigned Loan. Movants insisted on a "cure" of the entire amount that their clearly erroneous records showed owing without adjustment for Movants' predecessors' repeated refusal to accept Plaintiff's tendered payments in accordance with the Plan. The Plan requires Plaintiff to tender payments in a sum certain to the owner of the Security Deed; and Plaintiff's counterparties to the Security Deed were obligated to accept those payments and apply them to their claim as set forth in the Plan and the Bankruptcy Court's orders. *See* Complaint, Exhibit 10 (Confirmation Order) at 2 ("Provisions of the Plan shall bind Debtor [and] all Creditors . . . whether or not such Creditors . . . have accepted the Plan.") and Exhibit 11 (Plan) at 12-13 (Treatment of Class 4). In addition, "an assignee takes the assignment subject to **defenses** against the assignor." *Pridgen v. Auto-Owners Ins. Co.*, 204 Ga. App. 322, 323 (1992) (emphasis added). The failure by Movants and their predecessors to accept and accurately apply those payments to an accurate Loan balance violated the Plan and injured Plaintiff. Movants were, and are, seeking to enforce greater rights than their assignor possessed at the time of the assignment even though they received the Loan subject to all of Plaintiff's defenses against their predecessors. Accordingly, Plaintiff properly states a claim for relief for breach of contract.

A bankruptcy plan is a contract to be interpreted under principles of contract interpretation. *Iberiabank v. Geisen (In re FFS Data, Inc.)*, 776 F.3d 1299, 1304, 25 Fla. L. Weekly Fed. C 833 (11th Cir. 2015). Bankruptcy courts determine the rights of debtors vis-à-vis mortgage holders following confirmation of a plan. *See, e.g.*, *Mortgage Corp of the South v. Bozeman (In re Bozeman)* Case No: 2:20-cv-00403-RAH (M.D.Ala. Dec. 28, 2020) appeal docketed 21-10987 (11th Cir. Mar. 23, 2021). In *Bozeman*, the District Court analyzed current Eleventh Circuit authority and held that a bankruptcy court may determine, with finality, the amount owed to a creditor. Where a "determination is made in a confirmed plan that the creditor neither objected to or appealed, the plan is *res judicata* on the amount of debt secured by the lien." *Id.* at 13. As so

stated, the Plaintiff's Plan under this Court's Confirmation Order is *res judicata*.[4] It follows that Plaintiff may make a claim for breach of contract.

## V.  Declaratory relief

Movants argue that declaratory relief is unnecessary and inappropriate based on "the lack of objections to the February 23 Correspondence and payment history, as well as the failure to even allege in the Complaint that Plaintiff actually made or tendered all payments under the Plan." Motion for Judgment at 15. The allegations of the Complaint establish both that Movants' predecessors refused multiple payments and that SN Servicing stated that it would refuse Plaintiff's payments. Georgia law does not require a tender in such circumstances to support a claim for relief. *See Nowlin*, 245 Ga. App. at 822; *Grebel*, 232 Ga. App. at 366; *S. Telecom Inc.*, 321 Ga. App. at 114. The Complaint details the continued discussions between Plaintiff and SN Servicing, as agent for Cabana Trust, following the February 23 Correspondence. There is no allegation in the Complaint that Plaintiff agreed that the payment history provided with the February 23 Correspondence was accurate. To the contrary, the Complaint details Plaintiff's repeated inquiries about the asserted principal balance and adjusted principal balance being considered for a loan modification. The Complaint clearly adequately alleges a dispute.

The purpose of this Complaint is to correct the numerous errors made by the many holders of the Loan and servicers to handle this Loan so that Plaintiff can make his plan payments in peace. As the Complaint clearly states, this has been an ongoing issue for years and will continue into the future without a determination by the Court. Further, as set forth above, Plaintiff was excused from tendering payments to SN Servicing and the owners of the Loan for which SN Servicing served as agent when SN Servicing informed Plaintiff that it would refuse his payments. And prior to SN Servicing's explicit refusal, Plaintiff was excused from tendering payment once Movants' predecessors established that his payments would be refused if tendered. Thus,

---

[4] As set forth above, this Court has jurisdiction to interpret and enforce its own Confirmation Order.

Movants' assertion that Plaintiff is not entitled to the declaratory relief sought in the Complaint fails, and the Court should not dismiss this Count as to Movants.

### VI. Movants are not entitled to judgment on Plaintiff's Counts for punitive damages and attorney's fees because Plaintiff has stated valid claims for relief for causes of action which support such damage awards.

Plaintiff states claims for punitive damages (Count VI) and attorney fees (Count VII). Punitive damages may be awarded. *See Sacramento v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071 (7th Cir. 2019). In *Sacramento*, the borrower brought an action against the mortgage loan servicer. *Sacramento* alleged that the defendants had engaged in wrongful loan servicing by treating her account as delinquent after her bankruptcy discharge. At trial, the borrower received a $3,000,000 punitive damages award. The Seventh Circuit conducted an "exacting" review of the punitive damage award and reduced it from $3,000,000 to $582,000. *Id.* at 1086 (also citing *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)). (compensatory damages seek to make the plaintiff whole and to redress the wrongs to her, but punitive damages are retributive in nature and seek to defer wrongful acts in the first place.); *see also Trevino v. HSBC Mortg. Servs. (In re Trevino)*, 615 B.R. 108, 146 (finding pursuant to § 105(a) that "Defendants should be jointly and severally liable to Plaintiffs for punitive damages of $9,000 and should additionally compensate Plaintiffs for their reasonable and attorneys' fees and expenses in prosecuting the abuse of process claim. . . .").

Plaintiff also states a claim for attorney fees. There are at least two bases for an award of attorney fees. First, the Court may award attorneys' fees under O.C.G.A. § 13-6-11 for actions in bad faith, stubbornly litigiousness, and causing unnecessary trouble and expense. Additionally, the Court may award attorneys' fees under 11 U.S.C. § 105. *See In re Cowan*, 2020 Bankr. LEXIS 3466, at *16 (Bankr. N.D. Ga. Dec. 10, 2020) (*"*Civil contempt for violating a discharge order will result in sanctions, which may include actual damages, attorney's fees, and punitive damages, if appropriate.").

Movants argue that punitive damages and attorney's fees are not independent causes of action. Even if this is the case, the only basis for judgment on the pleadings as to Counts VI and VII of the Complaint is if the underlying Counts against Movants are dismissed. As set forth above, Plaintiff has stated valid claims for relief under the other substantive Counts of Plaintiff's Complaint. Therefore, as set forth above, the Court should not enter judgment in favor of Movants as to such claims (without limitation the claims for contempt and breach of contract). Therefore, Plaintiff has pled valid damage claims for punitive damages and attorney fees. Therefore, the Court should not enter judgment in favor of Movants as to Plaintiff's Counts VI and VII.

## CONCLUSION

Movants, or their agent SN Servicing, informed Plaintiff that they would not accept Plaintiff's tendered payments and now seek to use Plaintiff's compliance with their notices against Plaintiff to state that he cannot bring the claims in the Complaint because he has failed to tender all payments. Georgia law does not require that a borrower tender payments to a creditor who has stated that it will refuse the payments, and under Georgia law, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Martin v. Hamilton State Bank*, 314 Ga. App. 334, 335 (2012) (internal quotations and citation omitted). Movants to the Loan subject to the defects it had in the hands of the assignors and subject to Plaintiff's defenses; yet Movants ignored the same in their attempts to demand more than they were entitled to from Plaintiff. *See Pridgen*, 204 Ga. App. at 323; *S. Telecom*, 321 Ga. App. at 114. Plaintiff has stated a claim for relief under each Count of Plaintiff's Complaint. The Court should therefore deny the Motion for Judgment.

Respectfully submitted this 12th day of May, 2022.

**JONES & WALDEN LLC**
*/s/ Aaron Anglin*
Aaron Anglin
Georgia Bar No. 585863
Attorneys for Stephen Brewster
699 Piedmont Ave., NE, Atlanta, Georgia 30308
(404) 564-9300
aanglin@joneswalden.com

15

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| **STEPHEN H. BREWSTER,** | **CHAPTER 11** |
| Debtor. | **CASE NO. 14-40039-PWB** |
| **STEPHEN H. BREWSTER,** | **ADVERSARY PROCEEDING** |
| Plaintiff, | **NO. 22-04007-PWB** |
| v. | |
| **CRIMSON PORTFOLIO, LLC, CRIMSON PORTFOLIO ALPHA, LLC, DRRF II SPE, LLC, DRRF TRUST 2015-1, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, MOUNTAINVIEW MORTGAGE OPPORTUNITIES FUND III TRUST I, WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR MVMF III, TRUST B, STATEBRIDGE COMPANY, LLC, FAY SERVICING, LLC, U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR CVI LCF MORTGAGE LOAN TRUST I, RUSHMORE LOAN MANAGEMENT SERVICES LLC, MTGLQ INVESTORS, L.P., US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST, U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES IV TRUST, and SN SERVICING CORPORATION,** | |
| Defendants. | |

## CERTIFICATE OF SERVICE

This is to certify that on the date indicated below the foregoing *Plaintiff's Response in Opposition to Motion for Judgment on the Pleadings by (1) U.S. Bank Trust National Association, as Trustee of the Tiki Series IV Trust, (2) U.S. Bank Trust National Association, as Trustee of the Cabana Series IV Trust, and (3) SN Servicing Corporation* (the "Response") was electronically filed using the Bankruptcy Court's Electronic Case Filing program which sends a notice of and an accompanying link to the Response to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

16

- **Austin Alexander**   Austin.Alexander@thompsonhine.com, ECFDocket@thompsonhine.com;kelly.thomas@thompsonhine.com;Jeremy.Campana@thompsonhine.com
- **Bret J. Chaness**   bchaness@rubinlublin.com, BJC-ECF-Notifications@rubinlublin.com
- **Shanna Gibbs**   shanna.gibbs@padgettlawgroup.com, BKecf@padgettlawgroup.com,angelica.reyes@padgettlawgroup.com,robin.lindsey@padgettlawgroup.com
- **Monica K. Gilroy**   monica.gilroy@gilroyfirm.com, mkg@gilroyfirm.com
- **G. Frank Nason**   fnason@lcenlaw.com, emiller@lcenlaw.com;emiller@ecf.courtdrive.com;NasonFR86494@notify.bestcase.com
- **Gregory M. Taube**   greg.taube@nelsonmullins.com, linnea.hann@nelsonmullins.com;ilene.maccioli@nelsonmullins.com
- **Mark J. Windham**   mark.windham@troutmansanders.com, FSLECFIntake@troutmansanders.com

This 12th day of May, 2022.

        **JONES & WALDEN LLC**

        */s/ Aaron Anglin*
        Aaron Anglin
        Georgia Bar No. 585863
        Attorneys for Stephen Brewster
        699 Piedmont Ave., NE
        Atlanta, Georgia 30308
        (404) 564-9300
        aanglin@joneswalden.com